IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| STEPHEN B. GRANT on behalf of The United States of America and on behalf of the State of Iowa<br><br>       Plaintiff/Relator,<br>v.<br><br>STEVEN K. ZORN, IOWA SLEEP DISORDERS CENTER, P.C., and IOWA CPAP, L.L.C.<br><br>       Defendants. | CASE NO. _____<br><br><br><br>**QUI TAM COMPLAINT**<br><br>**(FILED UNDER SEAL)** |

COMES NOW, Relator Stephen B. Grant, by and through the undersigned counsel, and brings this qui tam action in the name of the United States of America and of the State of Iowa, as follows:

## **INTRODUCTION**

1.      This is an action by qui tam Relator Stephen B. Grant, M.D. ("Grant"), on behalf of the United States, and the State of Iowa against Defendants Steven K. Zorn, M.D. ("Zorn"), Iowa Sleep Disorders Center, P.C. ("Iowa Sleep"), and Iowa CPAP, L.L.C. ("Iowa CPAP") to recover penalties and damages arising from false statements Defendants made regarding the accuracy and reliability of its billing for services in an effort to secure federal monies allocated to the states pursuant to Medicaid, and directly from Medicare, TRICARE, and Veterans Health Administration, and federal insurance plans.

1

2. Relator Grant works as a provider at Iowa Sleep, and is a ten percent (10%) owner of Iowa Sleep and Iowa CPAP. Relator Grant did not pay for the shares, and has not sought to purchase additional shares, though permitted under the stock agreement. As such, Relator Grant is privy to intimate details concerning the operation of Iowa Sleep, Iowa CPAP, and their billing practices.

## **PARTIES**

3. Relator Grant is, and at all material times hereto, was a resident of Polk County, Iowa and a Citizen of the State of Iowa. Dr. Grant serves as a Flight Surgeon in the United States Air Force and also serves in the Iowa Air National Guard. *See* Attachment 1 (Dr. Stephen Grant CV)

4. Iowa Sleep Disorders Center, P.C., is an Iowa Professional Company licensed to do business in Iowa, whose registered agent is Steven Zorn, and whose principal place of business is in Polk County, Iowa.

5. Iowa CPAP, L.L.C., is an Iowa Limited Liability Company licensed to do business in Iowa, whose registered agent is Barbara Zorn, wife of Steven Zorn, and whose principal place of business is in Polk County, Iowa.

6. Upon information and belief, Defendant Steven Zorn is, and at all material times hereto, was a resident of Polk County, Iowa and a Citizen of the State of Iowa.

7. At all times relevant hereto, Defendant Zorn was and currently is the President and majority shareholder of Iowa Sleep.

8. At all times relevant hereto, Defendant Zorn was and currently is the President and majority shareholder of Iowa CPAP.

**JURISDICTION & VENUE**

9. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and the Iowa False Claims Act, Iowa Code § 685 *et seq.*

10. This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) (False Claims Act), 28 U.S.C. § 1331 (Federal Question), and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

11. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because (i) Defendant resides in this district; (ii) Defendants transact business in this district and did so at all times relevant to this complaint; and, as alleged below; (iii) Defendants committed acts proscribed by 31U.S.C. § 3729 and 42 U.S.C. § 1320a-7b – acts giving rise to this action – within this district.

12. This complaint together with a written disclosure statement setting forth and enclosing all material evidence and information Relator possesses, pursuant to the requirements of 31 U.S.C. § 3730(b)(2), has been served upon the United States. Pursuant to the requirements of Iowa Code § 685.3 such written disclosure was also served upon the State of Iowa.

13. Relator Grant has complied with all other conditions precedent to bringing this action.

14. Relator Grant is the original source of, and has direct and independent knowledge of, any disclosed information on which any allegations herein might be deemed based, and has voluntarily provided such information to the Government before filing this action.

## FACTUAL BACKGROUND

15. Enacted in 1965 through amendments to the Social Security Act, Medicaid is a health and long-term care coverage program that is jointly financed by states and the federal government that serves persons of all ages whose income and resources are insufficient to pay for health care. Medicaid is the largest source of funding for medical and health-related services for people with low income in the United States. Medicaid is funded by both the United States and the State of Iowa.

16. Medicare is a federal health insurance program providing coverage for Americans over the age of 65, younger citizens with disability status determined by the Social Security Administration. Over 55 million persons receive health insurance through Medicare. Medicare is funded by the United States.

17. The federal government funds additional health insurance programs, including but not limited to TRICARE and the Veterans Health Administration.

18. Each state establishes and administers its own Medicaid program and determines the type, amount, duration, and scope of services covered within broad federal guidelines. States must cover certain mandatory benefits and may choose to provide other optional benefits.

19.    Defendant Iowa Sleep was established as a professional corporation in 1993 by Defendant Dr. Steven K. Zorn. Defendant Zorn was the sole shareholder of Iowa Sleep.

20.    Defendant Iowa Sleep accepts federal and state monies in return for treating sleep disorders from its offices located in Polk County, Iowa.

21.    Defendant Iowa Sleep receives approximately 35% – 40% of its funding from federal and state reimbursement programs.

22.    Defendant Iowa Sleep includes two (2) Iowa offices: one in West Des Moines (4060 Westown Parkway, West Des Moines) and one in Ankeny (400 SE Delaware Ave., Ankeny).

23.    In August 2009, Defendant Iowa Sleep hired Relator Stephen Grant as a physician providing medical services in the sleep field.

24.    In January, 2011, Defendant Zorn established Defendant Iowa CPAP, LLC. Defendant Iowa CPAP provides medical equipment and supplies for sleep apnea and other respiratory disorders. Defendant Zorn was the sole shareholder of Iowa CPAP.

25.    Defendant Iowa CPAP accepts federal monies for its medical supplies and accessories. Upon information and belief, Defendant Iowa CPAP does not accept Medicare or Medicaid programs, but does provide services through other federal providers and/or insurance plans.

26. Defendant Iowa CPAP also has two (2) Iowa offices: one in West Des Moines (4040 Westown Pkwy., West Des Moines) and one in Ankeny (2005 S. Ankeny Blvd. Ste. 600, Ankeny).

27. Defendant Zorn retains all profits produced by Iowa Sleep and Iowa CPAP.

28. On June 17, 2014, Defendant Zorn conveyed a ten percent (10%) interest in Iowa Sleep and a ten percent (10%) interest in Iowa CPAP to Relator Grant. Relator Grant did not provide any consideration for these ownership interests.

29. Relator Grant had the option to purchase an additional fourteen and a half percent (14.5%) of both Iowa Sleep and Iowa CPAP for consideration. Relator Grant did not exercise either option due to concerns regarding the operation of the businesses.

30. On or about May 24, 2016, Defendant Zorn held a "Leadership Team Meeting" with Relator Grant and employees of Iowa Sleep & Iowa CPAP:

      a. Barb Zorn (Operations/Financials at Iowa CPAP)

      b. Vicki Richmond (Medical Assistant at Iowa Sleep)

      c. Terrie Davenport (Office Manager at Iowa Sleep)

      d. Brandon Butters (Operations Manager at Iowa Sleep)

31. Noteworthy is Defendant Zorn directed the May 24, 2016 meeting attendees to use Iowa CPAP as its *exclusive* medical equipment provider. *See* Attachment 2 (Minutes to 5/24/16 Team Meeting).

32. Upon information and belief, similar instructions to direct patients to Iowa CPAP and away from other direct medical equipment providers were given to employees nurse practitioner Diedre Benson and physician assistant Carol Smith.

33. Again in October 2016, Defendant Zorn held another team meeting wherein Relator Grant was pressured to support and exclusively refer patients to Iowa CPAP. Indeed, Defendant Zorn prohibited the presence of other DME companies at Iowa Sleep. *See* Attachment 3 (Butters Email re Outside DME at Iowa Sleep 10/11/16).

34. In October 2016, Relator Grant asked Defendant Zorn a series of questions regarding the operation and future of Iowa Sleep.

35. In particular, Relator Grant was concerned to learn Iowa Sleep had borrowed money from Iowa CPAP for operating expenses. *See* Attachment 4 (Email String of 10/12/16 – 10/13/16). In his response, Defendant Zorn notes that "OSA starts at 5" and "the least we can do is support [Iowa CPAP]." *Id.*

36. In response to the Relator Grant's questions, Defendant Zorn conducted a review of Relator Grant's "performance." This was the first such review since Relator Grant joined Defendant Zorn's practice.

37. At that performance review, Defendant Zorn compared Defendant Zorn's billing to Relator Grant's billing, noting no year where their billings were equal. Rather, with respect to Iowa Sleep, Relator Grant's billing was only 64.6% of Defendant Zorn's billing in 2016. *See* Attachment 5 (Grant Review – 10/17/16). Moreover, with respect to Iowa CPAP, the difference was even greater. Relator

Grant's billings (i.e. referrals) were only 35.3% of Defendant Zorn's billings (i.e. referrals) in 2016. *Id.*

38.    The records provided show Defendant Zorn routinely and consistently billing all *new* patients at Level 5, regardless of the type or severity of problem evaluated or time spent with the patient. *See* Attachment 6 (September 6, 2016 CMS Letter) (noting, "Dr. Zorn billed CPT Code 99205 (highest level of initial office visits) 100% of the time. . . [m]ore variety would be expected.")

39.    Indeed, Defendant Zorn even billed his *established* patient appointments at a level than appropriate. *See* Attachments 5 & 6.

40.    In March 2016, Dr. Zorn knowingly and specifically decreased the time scheduled for appointments with each new patient from 60 minutes to 40 minutes, and for established patients from 30 minutes to 20 minutes. Relator Grant decreased the level billed at accordingly, but Defendant Zorn continued to bill the appointments at Level 5.

41.    On September 6, 2016, CMS issued correspondence noting Advance Med performed data analysis of Defendant Zorn's submitted claims to Medicare, finding CPT code 99214 make up a significant portion of Defendant Zorn submitted claims from June 24, 2012 through June 24, 2016. *See* Attachment 6.

42.    Defendant Zorn continually criticized Relator Grant's practices for not matching Defendant Zorn's own billing levels.

43.    Defendant Zorn specifically directed Relator Grant to bill his appointments at Level 5.

8

44. Wellmark has questioned Defendant Zorn's constant Level 5 billing, noting the documentation provided did not support the level billed.

45. On January 22, 2018, Medicare via AdvanceMed again advised Defendant Zorn his documentation did not support Level 5 billing. *See* Attachment 7 (January 22, 2018 CMS Letter). The 2018 notice specifically mentioned the prior education provided September 6, 2016, regarding the documentation necessary to bill at Level 5.

46. The AdvanceMed review also noted established patient evaluations had been billed at a higher level of examination than needed or performed. Indeed, the review noted most of the services billed at level 4 and level 5, for both new and established patients, were not supported by the documentation from those appointments.

47. Defendant Zorn's October 2016 review of Relator Grant also addressed Relator Grant's billing referrals to Iowa CPAP, again comparing them to the referrals provided by Defendant Zorn.

48. Defendant Zorn informed Relator Grant he was not prescribing CPAP at the proper level.

49. Defendant Zorn directed Relator Grant to use CPAP as the "first line" therapy to be used for those with AHI of 5-15 (mild obstructive sleep apnea) and questioned the use of other therapies outside of CPAP. Relator Grant's training, education, and experience suggested other appropriate treatments contrary to Defendant Zorn's direction. *See* Attachment 1 (Dr. Stephen Grant CV)

50. Dr. Grant's approach using alternate therapies based on patient needs is grounded in current medical practice. For example, the American Academy of Sleep Medicine, the leading authority on sleep medicine, has noted in its Practice Parameters conflicting evidence regarding the use of CPAP for mild apnea since 2006, and rates its use as "optional," rather than standard. The Mayo Clinic only recommends CPAP for moderate to severe apnea, and studies in published in medical resources such as the Journal of Otolaryngology and Journal of Clinical Sleep Medicine have indicated CPAP is not an effective treatment for mild apnea. *See* Attachment 8 (Example Authorities on Mild Apnea Treatment)

51. Defendant Zorn provided pie charts indicating Zorn referred over half the revenue of Iowa CPAP each year, with Zorn responsible for over $500,000 of revenue via referrals in recent years.

52. Defendant Zorn's prescriptions for CPAP over other therapies has increased dramatically since the opening of Iowa CPAP. Defendant Zorn rarely prescribes any other method of treatment or informs patients of other options for treatment, and seeks to maximize the number of patients he places on CPAP.

53. Any prescription from Defendant Zorn or Relator Grant are refereed by Iowa CPAP.

54. Defendant Zorn has instructed that other CPAP equipment providers are not permitted to market their services at Iowa Sleep, and that only Iowa CPAP may market at Iowa Sleep.

55. All profit from Iowa CPAP flows directly to and only to Defendant Zorn.

56. One may reasonably infer that Defendant Zorn, through Iowa CPAP, billed the government for medical devices and services sold due to prescriptions refereed by and patients specifically referred to Iowa CPAP.

57. Discovery of other requests for payment unquestionably would reveal numerous similar (if not identical) fraudulent activity and additional misstatements in Defendants' attempts to receive funds they were not entitled to.

## COUNT I
## Violations of the Federal False Claims Act

58. Relator Grant incorporates the above paragraphs as if set forth fully herein.

59. As described in this Qui Tam Complaint, Defendants, individually, and by and through their officers, agents, and employees: (i) knowingly presented, or caused to be presented, to the United States Government, a false or fraudulent claim for payment or approval; and (ii) knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the federal Government.

60. Defendants authorized and ratified the violations of the federal False Claims Act committed by their various officers, agents, and employees.

61. The United States Government and the public have been damaged as a result of Defendants' violations of the federal False Claims Act.

**WHEREFORE**, Relator Stephen B. Grant, on behalf of himself and the United States Government, pray:

(i) that this Court enter a judgment against Defendants in an amount equal to three times the amount of damages the United States and the State of Iowa have sustained as a result of Defendants' violations of the False Claims Act;

(ii) that this Court enter a judgment against Defendants for a civil penalty of $10,000 for each of Defendant's violations of the False Claims Act;

(iii) that Relator Stephen B. Grant recover all costs of this action, with interest, including the cost to the United States Government and the State of Iowa for its expenses related to this action;

(iv) that Relator Stephen B. Grant be awarded all reasonable attorneys' fees in bringing this action;

(v) that in the event the United States Government and/or the State of Iowa proceeds with this action, Relator Stephen B. Grant be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(vi) that in the event the United States Government and the State of Iowa do not proceed with this action, Relator Stephen B. Grant be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

(vii) that Relator Stephen B. Grant be awarded prejudgment interest;

(viii) that a trial by jury be held on all issues so triable; and

(ix) that Relator Stephen B. Grant, the United States of America, and the State of Iowa receive all relief to which either or both may be entitled at law or in equity.

## COUNT II
## Violations of the Iowa False Claims Act

62. Relator Grant incorporates the above paragraphs as if set forth fully herein.

63. As described in this Qui Tam Complaint, Defendants, individually, and by and through their officers, agents, and employees: (i) knowingly presented, or caused to be presented, to the State of Iowa, a false or fraudulent claim for payment or approval; and (ii) knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State Government.

64. Defendants authorized and ratified the violations of the state False Claims Act committed by their various officers, agents, and employees.

65. The State of Iowa and the public have been damaged as a result of Defendants' violations of the Iowa False Claims Act.

66. Pursuant to Iowa False Claims Act, Iowa Code § 685.1 *et seq.*, Relator Stephen B. Grant is a Qui Tam Plaintiff.

67. As such, Qui Tam Plaintiff Grant asserts the above allegations as they relate to violations listed in Iowa Code § 685.2 and otherwise set forth in Iowa law.

**WHEREFORE**, Relator Stephen B. Grant, on behalf of himself and the State of Iowa, pray:

(i) that this Court enter a judgment against Defendants in an amount equal to three times the amount of damages the United States and the State of Iowa have sustained as a result of Defendants' violations of the False Claims Act;

(ii) that this Court enter a judgment against Defendants for a civil penalty of $10,000 for each of Defendant's violations of the False Claims Act;

(iii) that Relator Stephen B. Grant recover all costs of this action, with interest, including the cost to the United States Government and the State of Iowa for its expenses related to this action;

(iv) that Relator Stephen B. Grant be awarded all reasonable attorneys' fees in bringing this action;

(v) that in the event the United States Government and/or the State of Iowa proceeds with this action, Relator Stephen B. Grant be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(vi) that in the event the United States Government and the State of Iowa do not proceed with this action, Relator Stephen B. Grant be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

(vii) that Relator Stephen B. Grant be awarded prejudgment interest;

(viii)  that a trial by jury be held on all issues so triable; and

(ix)  that Relator Stephen B. Grant, the United States of America, and the State of Iowa receive all relief to which either or both may be entitled at law or in equity.

## COUNT III
## Violations of Anti-Kickback Statute

68. Relator Grant incorporates the above paragraphs as if set forth fully herein.

69. Defendant Zorn requires all prescriptions run through Iowa CPAP.

70. Defendant Zorn prioritized his CPAP prescriptions over other treatment methods following the opening of Iowa CPAP.

71. Defendant Zorn negatively reviewed Relator Grant for not prescribing CPAP use and referring patients to Iowa CPAP at the rate Zorn deemed appropriate.

72. Defendant Zorn receives remuneration from and profits from his referrals to and prescriptions through Iowa CPAP.

73. Defendant Zorn has knowingly solicited referrals to his company Iowa CPAP, directing Relator Grant and others at Iowa Sleep to increase CPAP referrals.

74. This kickback scheme is in violation of 42 U.S.C. § 1320a-7b(b).

75. A claim for items of services in violation of 42 U.S.C. § 1320a-7b constitute a false or fraudulent claim for purposes of the False Claim Act.  42 U.S.C. § 1320a-7b(g).

**WHEREFORE**, Relator Stephen B. Grant, on behalf of himself and the United States Government, prays:

(i) that this Court enter a judgment against Defendants in an amount equal to three times the amount of damages the United States and the State of Iowa have sustained as a result of Defendants' violations of the Anti-Kickback Statute and therefore False Claims Act;

(ii) that this Court enter a judgment against Defendants for a civil penalty of $10,000 for each of Defendant's violations of the Anti-Kickback Statute and False Claims Act;

(iii) that Relator Stephen B. Grant recover all costs of this action, with interest, including the cost to the United States Government and the State of Iowa for its expenses related to this action;

(iv) that Relator Stephen B. Grant be awarded all reasonable attorneys' fees in bringing this action;

(v) that in the event the United States Government and/or the State of Iowa proceeds with this action, Relator Stephen B. Grant be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(vi) that in the event the United States Government and the State of Iowa do not proceed with this action, Relator Stephen B. Grant be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

(vii) that Relator Stephen B. Grant be awarded prejudgment interest;

(viii) that a trial by jury be held on all issues so triable; and

(ix) that Relator Stephen B. Grant, the United States of America, and the State of Iowa receive all relief to which either or both may be entitled at law or in equity.

## JURY DEMAND

**COME NOW** Relator Stephen B. Grant, on behalf of himself and the United States Government and the State of Iowa, by and through his attorney, and requests a trial by jury.

Respectfully submitted,

GREFE & SIDNEY, P.L.C.

By: */s/ Adam Zenor*
Adam Zenor, AT0009698
Lauren Van Waardhuizen, AT0012407
500 E. Court Ave., Ste. 200
Des Moines, IA 50309
Phone: 515/245-4300
Fax: 515/245-4452
azenor@grefesidney.com
lvanwaardhuizen@grefesidney.com

ATTORNEYS FOR PLAINTIFF/RELATOR
STEPHEN B. GRANT

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon the United States and the State of Iowa on the 26th day of March, 2018, pursuant to Federal Rule of Civil Procedure 4(i) and Iowa Rule of Civil Procedure 1.305.

  /s/ Adam Zenor

| Attachment | Description | Pages |
|---|---|---|
| 1 | Dr. Stephen Grant CV | 3 |
| 2 | Minutes to 5/24/16 Team Meeting | 3 |
| 3 | Butters Email re Outside DME at Iowa Sleep 10/11/16 | 1 |
| 4 | Email String of 10/12/16 – 10/13/16 | 3 |
| 5 | Grant Review – 10/17/16 | 19 |
| 6 | September 6, 2016 CMS Letter | 6 |
| 7 | January 22, 2018 CMS Letter | 6 |
| 8 | Example Authorities on Mild Apnea Treatment | 34 |